**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01828-REB

LEWIS RICHARDSON,

     Applicant,

v.

PAM PLOUGHE, Warden, Four Mile Correctional Center, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

     Respondents.

---

## ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

---

**ROBERT E. BLACKBURN, District Judge.**

     This matter is before the Court on Applicant Lewis Richardson's *pro se*

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [# 1],[1] filed on

July 12, 2012.   Respondents filed an Answer to the Application [# 18] and Applicant

has filed a Traverse [# 23].   Having considered the same, along with the state court

record, the Court has determined that the Application can be resolved on the parties'

briefing and that no oral argument or evidentiary hearing is necessary.

## I.  BACKGROUND

     On June 4, 2004, a jury in the District Court for Park County, Colorado found Mr.

Richardson guilty of forgery, possession of forgery devices, wrongful possession of a

journal or seal, violation of a restraining order, harassment by stalking, and offering a

false instrument for recording.  [State Court R., Court File, at 483; 6/4/04 Trial Tr].   The

---

[1] "[# 1]" is an example of the convention I use to identify the docket number assigned to a specific
paper by the court's electronic case filing and management system (CM/ECF).

following statement of relevant facts is taken from the Colorado Court of Appeals'

decision on direct appeal of Applicant's conviction in *People v. Richardson* (*Richardson*

*I*), 181 P.3d 340 (Colo. App. 2007):

> In this case, we are primarily called upon to determine whether a person may be prosecuted for stalking based in part on the person's filing lawsuits against another individual.

> Defendant had been friends with the victim for nearly ten years before he was implicated in committing, and in falsely accusing another of committing, an act of vandalism against the victim's property. Defendant, who had previously expressed a romantic interest in the victim, was arrested and pled nolo contendere to a charge of false reporting.

> A series of restraining orders was issued, prohibiting defendant from contacting the victim. Nonetheless, defendant contacted the victim through letters and telephone calls. Over the next year, he repeatedly threatened to overwhelm her with lawsuits and bring her to financial ruin if she would not communicate with him. In one letter, he wrote:

>> If I file ten lawsuits and win only one of them then I will still get my revenge because that one lawsuit will be for $5,000, $10,000, or maybe even $20,000. That alone will trash your credit score & give you a severe financial crisis. Meanwhile, the other nine lawsuits are going to drain your pocketbook, just in legal fees.

> Indeed, defendant filed pro se thirteen lawsuits against the victim, in Arapahoe, Denver, and Park Counties. The prosecution presented evidence that the victim was initially unaware of these lawsuits and that some of defendant's notarized attestations of service of process had been forged. Defendant was also found to be in possession of (1) computer disks containing a scanned signature of the victim and digitized notary seals; (2) forged or manufactured legal documents; and (3) other documents purporting to bear the victim's signature.

> In the thirteen cases, defendant obtained two default judgments (which the victim subsequently was able to get vacated); otherwise, his claims were either abandoned or dismissed for lack of proper service.

*Richardson I*, 181 P.3d at 343.

Following his convictions, Applicant pled guilty to four habitual criminal counts, and was sentenced to an aggregate term of thirty-years imprisonment. [State Court R., Court File, 483-484; 8/4/04 Hrg. Tr.].

The Colorado Court of Appeals affirmed Mr. Richardson's convictions on direct appeal in *Richardson I*. The Colorado Supreme Court denied certiorari review on April 28, 2008. [# 11-4].

Mr. Richardson filed a motion for sentence reconsideration on September 22, 2008, which the trial court denied on March 10, 2009. [# 11-1, at 14-15]. Applicant did not file an appeal.

On March 19, 2009, Mr. Richardson filed the first of two motions for post-conviction relief pursuant to Rule 35 of the Colorado Rules of Civil Procedure. [*Id.*]. The trial court denied the motions without a hearing. [*Id.* at 13-14]. The Colorado Court of Appeals affirmed the trial court's order in *People v. Richardson* (*Richardson II*) , No. 09-CA2759 (Colo. App. Feb. 2, 2012) (not published). [# 1, at 35]. Applicant did not seek certiorari review, and the mandate issued on March 29, 2012. [# 11-7].

Mr. Richardson filed his § 2254 Application on July 12, 2012. The Application raises the following claims:  (1) Colorado's stalking statute is unconstitutionally (a) vague; and (b) overbroad; (c) abrogates the common law abuse of process; and, (d) violates the statutory construction canon of in pari materia; furthermore, the court's rulings amount to (e) selective and retaliatory prosecution; and, (f) judicial ex post facto; (2)(a) his right to due process was violated because the element of vexatiousness was never determined by the jury; (b) direct appeal counsel was ineffective by failing to seek certiorari review from the Colorado Supreme Court on the issue of whether Applicant's

3

due process rights were violated because the element of vexatiousness was not determined by the jury; and, (c) his protection against judicial ex post facto was violated because "he is the only person in the history of the state of Colorado to have his civil court filings in one county deemed a criminal stalking act by another county"; and (3) the trial court lacked subject matter jurisdiction over the stalking charge because the charging document failed to adequately notify him of the conduct that was alleged to have violated state law.

On preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness and exhaustion of state remedies.  Respondents conceded in the pre-answer response that the Application was timely under the one-year AEDPA limitation period in 28 U.S.C. § 2244(d).  Respondents further conceded that Applicant exhausted his state court remedies for claim 1(b).  Respondents argued, however, that Applicant procedurally defaulted his other claims in the state courts.  In a previous order, I dismissed claims 1(c), 1(d), 1(e), 2(a), and 2(c) as procedurally barred. [#15; filed 10/2/12].  Alternatively, claims 1(c) and 1(d) were dismissed because the claims present issues of state law only.  [*Id.*].  I further determined that Applicant properly exhausted state remedies for claims 1(a), 1(b), 2(b) and 3.  [*Id.*].  I review the merits of those claims below.

## II.  STANDARD OF REVIEW

I must construe the Application and other papers filed by Applicant liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519,

520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).  However, I may

not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

I review claims of legal error and mixed questions of law and fact pursuant to 28

U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The

threshold question I must answer under § 2254(d)(1) is whether Applicant seeks to

apply a rule of law that was clearly established by the Supreme Court at the time his

conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly

established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.

Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case sub judice.
> Although the legal rule at issue need not have had its genesis in the
> closely-related or similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.

If a clearly established rule of federal law is implicated, I must determine whether the

state court's decision was contrary to or an unreasonable application of that clearly

established rule of federal law.  *See Williams*, 529 U.S. at 404–05.

> A state-court decision is contrary to clearly established federal law if: (a)
> "the state court applies a rule that contradicts the governing law set forth
> in Supreme Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent."
> *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.' "
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule
> from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at
> 407–08.  Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably extends, or
> unreasonably refuses to extend, a legal principle from Supreme Court
> precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective

inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (internal quotation marks omitted).  In

conducting this analysis, the Court "must determine what arguments or theories

supported or . . . could have supported[ ] the state court's decision" and then "ask

whether it is possible fairminded jurists could disagree that those arguments or theories

are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Moreover, "review under § 2254(d)(1) is limited to the record that was before the state

court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).  Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### III.  MERITS OF THE CLAIMS

**A.  Claims 1(a) and 1(b)**

Mr. Richardson asserts in claims 1(a) and 1(b) that provisions of Colorado's stalking statute are unconstitutionally vague and overbroad on their face and as applied to the facts of his case.

The challenged statutory provisions state, in relevant part:

A person commits stalking if directly, or indirectly through another person, such person knowingly:
. . .

Repeatedly follows, approaches, contacts, places under surveillance, or makes any  form of communication with another person . . . in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress.

§18-9-111(4)(b)(III), C.R.S. (2007).[2]

> "If, at the time of the offense, there was a temporary or permanent protective order . . . in effect against such person prohibiting the behavior described in [section 18–9–111(4)(b)(III) ], such person commits a class 4 felony."

§18–9–111(5)(b), C.R.S. (2007).[3]

### 1. *Facial challenge*

Applicant asserted in his opening brief on direct appeal that §18-9-111(4)(b)(III) is on its face (1) vague because the "manner" in which someone could cause another serious emotional distress is "limitless"; and (2) overbroad because the limitless nature of the "manner" in which a person may cause "serious emotional distress" operates to "include within its proscriptions a substantial amount of constitutionally protected speech."   (# 11-2, at 27-28, 33-34).

When a law is challenged on the grounds of overbreadth and vagueness, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.  If it does not, then the overbreadth challenge must fail."  *Hoffman Estates v. Flipside,* 455 U.S. 489, 494 (1982).  If the law regulates conduct, as opposed to pure speech, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).  Furthermore, "[v]iolence or other types of potentially expressive activities that produce special harms distinct from their

---

[2] Subsection 4 was repealed in 2010.  *See* Laws 2010, Ch. 88, § 2, eff. Aug. 11, 2010.

[3] *Id.*

communicative impact, . . . are entitled to no constitutional protection." *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984).

"A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process." *Id.* at 1193. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The court should uphold a facial vagueness challenge only if the statute is impermissibly vague in all of its applications. *Hoffman Estates*, 455 U.S. at 497.

In analyzing Applicant's claim on direct appeal, the Colorado Court of Appeals first set forth the applicable constitutional principles:

> Vague laws "offend due process because they fail to give fair notice of the conduct prohibited and do not supply adequate standards to those who apply them to prevent arbitrary and discriminatory enforcement." *People v. McIntier*, 134 P.3d 467, 474 (Colo. App. 2005).
>
> A statute which proscribes conduct which can be prohibited under the police power of the state is overbroad if it also purports to proscribe conduct which cannot validly be prohibited under that power." *People v. Sequin*, 199 Colo. 381, 384, 609 P.2d 622, 624 (1980). "A statute is facially overbroad if, in addition to proscribing conduct that is not constitutionally protected, its proscriptions sweep in a substantial amount of activity that is constitutionally protected." *People v. Pahl*, 169 P.3d 169, 188 (Colo. App. 2006).

*Richardson I*, 181 P.3d at 343.

The state appellate court then rejected Mr. Richardson's facial challenges to the

stalking statute on the following grounds:

> In *People v. Cross*, 127 P.3d 71 (Colo. 2006), the supreme court determined that §18–9–111(4)(b)(III) is neither vague nor overbroad on its face. In discussing the type of conduct encompassed by the statute, the court recognized that the legislature meant to criminalize only conduct which involves a "severe intrusion[s] upon the victim's personal privacy and autonomy, with an immediate and long-lasting impact on quality of life as well as risks to security and safety of the victim and persons close to the victim." *People v. Cross*, 127 P.3d at 79 (quoting § 18–9–111(4)(a), C.R.S. 2007)(emphasis added). And because "a reasonable person could know that the only acts prohibited are those that would cause a reasonable person to suffer serious emotional distress and do in fact cause such distress," the statute allows citizens of common intelligence to gauge their behavior accordingly and provides a nonarbitrary standard for enforcement. *People v. Cross*, 127 P.3d at 78. Thus, the statute is not unconstitutionally vague on its face. *Id.*
>
> With respect to the overbreadth argument, the supreme court in *Cross* determined that, inasmuch as the statute criminalizes only acts of a particular nature (acts involving "highly inappropriate intensity, persistence, and possessiveness," severely intruding upon a victim's "personal privacy and autonomy," §18–9–111(4)(a)) and having a particular effect (objectively and subjectively causing "serious emotional distress," §18–9–111(4)(b)(III) ), its sweep would not include a substantial amount of constitutionally regulated speech. Thus, the statute is not unconstitutionally overbroad on its face. *People v. Cross*, 127 P.3d at 79.
>
> A corollary of the *Cross* holding, of course, is that section 18–9–111(4)(b)(III) need not expressly exempt from its coverage constitutionally protected activity to survive an overbreadth challenge.
>
> We recognize that in *Cross* the supreme court was not asked to assess the constitutional effect of the term "manner." But the supreme court was asked to assess the constitutionality of the phrase ("in a manner that would cause a reasonable person to suffer serious emotional distress") which included that word. When the supreme court found no constitutional infirmity with the phrase, it necessarily rejected, as do we, defendant's facial challenges to the validity of section 18–9–111(4)(b)(III). *See People v. Cross*, 127 P.3d at 78–79.
>
> [Applicant] also challenges the facial validity of section 18–9–111(5)(b), which provides in relevant part, "If, at the time of the

offense, there was a temporary or permanent protective order ... in effect against such person prohibiting the behavior described in [section 18–9–111(4)(b)(III) ], such person commits a class 4 felony." We reject [Applicant's] challenge, however, inasmuch as it is based upon a premise which we have already rejected, that is, that section 18–9–111(4)(b)(III) is invalid on its face.

*Richardson I*, 181 P.3d at 344.

A federal habeas court is constrained by the state appellate court's interpretation of a state statute.  *See Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  I am thus bound by the Colorado Court of Appeals' interpretation that §18-9-111(4)(b)(III), C.R.S., is intended "to criminalize only conduct which involves a [*sic*] 'severe intrusion[s] upon the victim's personal privacy and autonomy, with an immediate and long-lasting impact on the quality of life as well as risks to security and safety of the victim and persons close to the victim.'" *Richardson I*, 181 P.3d at 344 (quoting *Cross*, 127 P.3d at 79).  Based on this interpretation, the  state appellate court's determination that the statute does not reach a substantial amount of constitutionally-protected conduct is consistent with the holding in *Roberts* that "expressive activities that produce special harms distinct from their communicative impact" are not entitled to constitutional protection.  *Roberts*, 468 U.S. at 628.  As such, the Colorado Court of Appeals' rejection of Applicant's overbreadth claim was a reasonable application of *Hoffman Estates* and *Broadrick*.  Furthermore, the Colorado Court of Appeals' conclusion that the statute adequately defines the prohibited conduct as acts that would cause a reasonable person to suffer serious emotional distress and

do in fact cause such distress comports with Supreme Court law on vagueness. *See Kolender*, 461 U.S. at 357.  Certainly, Applicant has not demonstrated that the statutes are void for vagueness in all their applications.  *See Hoffman Estates*, 455 U.S. at 497. I therefore reject Mr. Richardson's claim challenging the facial validity of §§18-9-111(4)(b)(III) and 18-9-114(5) as unconstitutionally overbroad and vague.

### 2.  *As-applied challenge*

Applicant next claims that §§18-9-111(4)(b)(III) and 18-8-111(5), C.R.S., are unconstitutional as applied to him because he was penalized criminally for his constitutionally-protected conduct in filing lawsuits in the state district courts. [# 1, at 9].

"[B]aseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983); *see also Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996) ("Depriving someone of a frivolous claim[ ] . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

The Colorado Court of Appeals rejected Mr. Richardson's claim on direct appeal based on its determination that he "engaged in a pattern of vexatious litigation by intentionally filing all but one of the thirteen lawsuits without notice to the victim to put her at a significant legal disadvantage, deprive her of her property without due process of law, and cause her serious emotional distress once she learned of the filings." *Richardson I*, 181 P.3d at 345. The state appellate court concluded:

> Because the constitutional right to access to the courts does not encompass a right to file lawsuits abusively in a manner designed to deprive another of effective access to the courts in his or her own defense, we conclude that [Applicant's] activity in intentionally filing lawsuits without notice to the victim, with the intention to use them to harass her and cause

13

>her serious emotional distress, was not constitutionally protected.
>Accordingly, [Applicant's] "as applied" challenge to section
>18–9–111(4)(b)(III) and (5)(b) fails.

*Id.*

The Colorado Court of Appeals determined that Applicant's lawsuits were vexatious. Under Colorado law, "vexatious" litigation means litigation brought or maintained in bad faith to annoy or harass another. *See Richardson*, 181 P.3d at 345 (citing *Bockar v. Patterson*, 899 P.2d 233, 235 (Colo. App.1994) (applying attorney fee provisions of §13–17–102; vexatiousness includes "conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of truth"). The state appellate court's conclusion that Mr. Richardson engaged in a pattern of vexatious litigation against the victim was based on a reasonable determination of the facts in light of the evidence presented at trial. [*See generally* State Court R. 5/25/04 - 6/1/04 Trial Trs.].

I find that the state appellate court's decision rejecting Applicant's as-applied challenge to the stalking statute was not contrary to Supreme Court precedent because the Supreme Court has never held that vexatious litigation is protected by the constitutional right of access to the Courts. *See House*, 527 F.3d at 1018 (a state appellate court determination cannot be contrary to Supreme Court law where the Supreme Court has not addressed the issue).

Further, although the Colorado Court of Appeals did not make a specific finding on frivolousness, the court's determination that vexatious litigation is not protected by the Constitution is a reasonable application of the following analysis in *Bill Johnson's Restaurants*:

> The first amendment interests involved in private litigation-compensation for violated rights and interests, the psychological benefits of vindication, public airing of disputed facts-are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims. Furthermore, since sham litigation by definition does not involve a bona fide grievance, it does not come within the first amendment right to petition.

*Bill Johnson's Restaurants*, 461 U.S. at 743.  It was reasonable for the state appellate court to conclude that the First Amendment interests in private litigation are not advanced by vexatious litigation.  Indeed, the Tenth Circuit has ruled repeatedly that "the right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous *or malicious. Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989) (citation omitted) (emphasis added);  *Winslow v. Hunter* (*In re Winslow*), 17 F.3d 314, 315 (10th Cir.1994) (same).  "[M]ost reasonable jurists exercising their independent judgment would not conclude that the state appellate court misapplied Supreme Court law.  *See Maynard*, 468 F.3d at 671.  Accordingly, I find that Mr. Richardson is not entitled to federal habeas relief for his claim that §§18-9-111(4)(b)(III) and 18-8-111(5), C.R.S., were applied to him in violation of his constitutional right of access to the courts.

Claims 1(a) and 1(b) will be dismissed in their entirety.

## B.  Claim 2(b)

In claim 2(b), Mr. Richardson asserts that direct appeal counsel was ineffective by failing to seek certiorari review from the Colorado Supreme Court on the issue of whether Applicant's due process rights were violated because the element of vexatiousness was not determined by the jury.  Applicant challenges the following decision by the Colorado Court of Appeals in *Richardson I*:

15

Here, [Applicant] asserts that no determination was made that his lawsuits against the victim were baseless or frivolous. However, the prosecution's theory was that defendant filed the lawsuits in bad faith with the intent to harass the victim into forcing her to communicate with him. And, when viewed in the light most favorable to the prosecution, the evidence supports the conclusion that [Applicant] engaged in a pattern of vexatious litigation by intentionally filing all but one of the thirteen lawsuits without notice to the victim to put her at a significant legal disadvantage, deprive her of her property without due process of law, and cause her serious emotional distress once she learned of the filings.

*Richardson I*, 181 P.3d at 345. [*See* # 1, at 8; # 11-5, at 15, 17]. In his state post-conviction proceeding, Applicant argued that appellate counsel was ineffective for failing to "seek Supreme Court review on the matter of vexatiousness." [# 11-5, at 17].

Ineffective assistance of appellate counsel claims are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (following *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)). To prevail on a claim of ineffective assistance of counsel, Applicant "must show both: (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding . . . would have been different." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (citing *Strickland*, 466 U.S. at 687-88). Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S.Ct. at 788.

When a habeas petitioner asserts that appellate counsel was ineffective in failing to raise an issue on appeal, the court looks to the merits of the omitted issue to

determine if the issue was meritorious.  *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152

(10th Cir. 1999). "[I]f the issue is meritless, its omission will not constitute deficient

performance." *Cargle*, 317 F.3d at 1202.  And even if the issue is meritorious but not

obviously compelling, the court "assess[es] the issue relative to the rest of the appeal"

and gives "deferential consideration . . . to any professional judgment involved in its

omission." *Id.*

It is difficult to demonstrate that appellate counsel was incompetent. *Smith v.*

*Robbins* 528 U.S. 259, 287 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.

1986) ("Generally, only when ignored issues are clearly stronger than those presented,

will the presumption of effective assistance of counsel be overcome").  Furthermore, the

Supreme Court has recognized that "appellate counsel who filed a merits brief need not

(and should not) raise every nonfrivolous claim, but rather may select from among them

in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing

*Jones v. Barnes*, 463 U.S. 745 (1983)).  The winnowing out of weaker arguments so

that counsel may focus the court's attention on those more likely to prevail "is the

hallmark of effective advocacy." *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir.1991).

Prejudice exists when there is a reasonable probability that, but for counsel's

defective representation, the result of the appeal proceeding would have been different.

*Strickland*, 466 U.S. at 693; *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000).  The

likelihood of a different result must be substantial, not just conceivable.  *Strickland*, 466

U.S. at 693.  Mere speculation is not sufficient to satisfy this burden. *See United States*

*v. Boone*, 62 F.3d 323, 327 (10th Cir.1995).  In addition, the court need not address

17

both prongs of the *Strickland* inquiry if Applicant's claim fails on one.  *Strickland*, 466 U.S. at 697.

In *Richardson II*, a division of the Colorado Court of Appeals affirmed the trial court's denial of Applicant's ineffective assistance of counsel claim because he failed to show that "meritorious grounds existed for reversal of the decision of the Court of Appeals [in *Richardson* I]."  [# 1, at 46].  I find that the state appellate court's decision was not contrary to, or an unreasonable application of, *Strickland*.  Again, I am bound by the Colorado Court of Appeals' interpretation of state law.  *Bradshaw*, 546 U.S. at 76.  *See also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")  The state appellate court interpreted the term "vexatious" litigation under Colorado law to include the conduct engaged in by Applicant, as demonstrated by the evidence presented at trial. *See Richardson I*, 181 P.3d at 345.  The state court's factual findings that Applicant "intentionally filed all but one of the thirteen lawsuits without notice to the victim to put her at a significant legal disadvantage, deprive her of her property without due process of law, and cause her serious emotional distress once she learned of the filings" are presumed correct in this habeas proceeding and are supported by the state court transcripts of Applicant's trial.  Mr. Richardson has failed to rebut that presumption with any clear and convincing evidence to the contrary.  Moreover, Applicant has not cited any Colorado appellate opinions to support his argument that his state court lawsuits were not vexatious.  *Cf. Bockar v. Patterson*, 899 P.2d 233, 235 (Colo. App. 1994) (litigation is vexatious, if brought or maintained in bad faith to annoy or harass another and includes "conduct that is arbitrary, abusive, stubbornly litigious, or

disrespectful of truth"); *Karr v. Williams*, 50 P.3d 910, 914 (Colo. 2002) ("[N]o one has a right to use the judicial process for the purpose of harassing or intimidating his adversaries). As such, Mr. Richardson's challenge to the Colorado Court of Appeals determination of vexatiousness is without merit and he cannot show that appellate counsel's failure to raise the issue in a petition for certiorari review to the Colorado Supreme Court was constitutionally deficient performance. Further, without a meritorious claim, Applicant's ineffective assistance of counsel claim also falters under the prejudice prong of the *Strickland* inquiry. And, finally, to the extent Applicant claims that appellate counsel failed to preserve the issue for federal habeas review, he again fails to establish prejudice because I have determined that Applicant exhausted state remedies for his claim and have reviewed it on the merits. Accordingly, I find that the Colorado Court of Appeals' decision was consistent with *Strickland* and was based on a reasonable determination of the facts in light of the evidence presented in the state court. Claim 2(b) therefore will be dismissed.

## C. Claim 3

For his third claim, Mr. Richardson asserts that the trial court lacked subject matter jurisdiction over the stalking charge because the charging document failed to adequately notify him of the conduct that was alleged to have violated state law.

An information may violate the Sixth Amendment by failing to provide adequate notice of the nature and cause of the accusations against the defendant. *Sallahdin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002). An indictment or information is constitutionally sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charge against which he must defend, and allows the defendant to

bar future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* at 117 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

The Colorado Court of Appeals rejected Applicant's claim in his state post-conviction proceeding on the following grounds:

> An indictment must provide a defendant with notice of the charges sufficient to allow preparation of an adequate defense and protection from further prosecution for the same offense. *Russell*, 36 P.3d at 95. Otherwise, it is substantively defective and a conviction obtained pursuant to the indictment is void. *Id.*

> Here, in charging Richardson with stalking, count V of the information tracked the applicable language of the harassment statute, former section 18-9-111(4)(b)(III). It thus alleged the essential elements of the crime. See *People v. Madison*, 176 P.3d 793, 803-04 (Colo. App. 2007).

> Richardson maintains, however, that his conviction must be reversed because the indictment did not specifically allege facts showing how he accomplished the offense of stalking. *See, e.g., People v. Tucker*, 631 .2d 162, 164 (Colo. 1981) (indictment for embezzlement held substantively defective for lack of specific acts on how defendant committed crime). However, any defect here did not preclude Richardson from preparing a meaningful defense. *See People v. Vigil*, 251 P.3d 442, 446 (Colo. App. 2010). The record shows that at a July 2003 preliminary hearing, almost a year before Richardson's trial, the victim testified that she believed his communications with her as of May 6, 2002, including letters, phone calls, and the filing of the lawsuits against her, constituted stalking. Accordingly, Richardson was sufficiently notified of the conduct for which he was charged in count V.

> We therefore conclude that the indictment concerning the stalking charge was substantively sufficient and the trial court thus had jurisdiction to prosecute Richardson on this count.

[*Richardson II*, # 1, at 42-44].

I find that the Colorado Court of Appeals' analysis constituted a reasonable application of Supreme Court precedent and was based on a reasonable determination of the facts in light of the evidence presented in the state court.   The state court record demonstrates that the Information tracked the language of §18-9-111(4)(b)(III), C.R.S. and alleged the essential elements of stalking. [State Court R., Court File, at 71].   *See Hamling*, 418 U.S. at 117.  In addition, Applicant was notified of the particular facts against which he would have to defend at the preliminary hearing. [State Court R. 7/21/03 Hrg. Tr].  Mr. Richardson therefore received adequate notice of the stalking charge.  *See Sallahdin*, 275 F.3d at 1227 ("Considering the Information along with the material available at the preliminary hearing and through discovery, we conclude Sallahdin received sufficient notice of the charge against him.").  I find and conclude that Applicant is not entitled to federal habeas relief for his third claim.

Finally, I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Richardson files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [ # 1] filed on July 12, 2012, by Applicant Lewis Richardson, is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE;**

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

4.  Leave to proceed *in forma pauperis* on appeal is denied; insread, Applicant may file a motion in the United States Court of Appeals for the Tenth Circuit.

Dated February 4, 2013, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge